It's 22-2004 Mr. Hubert, if you'd begin. May it please the Court. In 2019, New Mexico enacted SD3. For the record, if you'd excuse me. Excuse me. By yourself. I'm sorry, Your Honor. My name is Jacob Hubert. I represent the Plaintiffs' Rio Grande Foundation and Illinois Opportunity Project. In 2019, New Mexico enacted SB3, a law that imposes certain rules on organizations that want to speak to the public about candidates for state office and ballot measures shortly before an election. One of SB3's rules is that if a group spends more than $9,000 on those kinds of communications in a statewide election or more than $3,000 in other state elections, then the group has to disclose information about its donors to the state. The plaintiffs in this case, Rio Grande Foundation and Illinois Opportunity Project, or IOP, both planned to make those types of communications in the 60 days before the November 2020 election. Rio Grande planned to spend more than $3,000 on mailers to legislative districts to inform people about their legislators' voting records, and IOP planned to spend more than $9,000 sending mailers about a statewide ballot issue. But Rio Grande and IOP didn't want to comply with SB3's requirements, particularly the requirement that they disclose their donors to the state because they protect their donors' privacy and they have reason to believe that their donors would be deterred from giving to them if they knew that their donations would be disclosed to the state and to the public. You're focused right now on the disclosure part of the law.  With respect to the identification of donors, with respect to the identification of RGF or IOP on their mailing or their publication, neither of these plaintiffs ever indicated any interest in not identifying themselves, did they? Well, when they sent mailers in the past, they have identified themselves on those mailers. Well, and they both testified that it was important to identify themselves on their mailers. They did, Your Honor, but nonetheless, they do these kinds of communications on an ongoing basis, and they want to have the option to make the decision at the time. Well, I'm not sure that having an option to do something that you've never done before and have indicated no interest in doing in the future gives you standing. Well, these groups have engaged in the type of speech that's at issue in this case, the issue advocacy, things identifying candidates, things about ballot measures before an election. And so Walker looks to whether you've done that kind of thing before, and that's the thing that triggers the statute and these burdens on you. And so they would be subject to the requirement whether they choose to comply with it or not. But it is true that... What was their testimony on this point, or what was in the affidavits on this point? Well, their testimony was... Judge McHugh indicated that basically they always identified themselves, they want to be identified, and they intend to do so in the future. I don't know how you get past that on the disclaimer issue. Well, Your Honor, certainly the primary issue they're concerned about is the disclosure, because they absolutely don't want to do the disclosure. And that's why they sought a preliminary injunction in this case. They especially didn't want to disclose their donors, and so they filed this lawsuit arguing that the disclosure and the disclaimer rules violate the First Amendment. And they sought a preliminary injunction so they could send their mailers out without complying with the disclosure rule in particular. But you would agree you have to have standing on each claim? That's correct, Your Honor. Okay, so if we think there's no standing on the disclaimer portion of the statute, then we can still focus on the disclosure portion? That's correct. Okay. And when the district court denied the motion for preliminary injunction, Rio Grande and IOP didn't send their mailers because they didn't want to disclose their donors. Then after the election, the court... Wait, wait, wait. That's not so clear from the record that that's why they didn't. It's also important here to know the timing, because as you pointed out, standing is determined at the time that the complaint is filed. But the record indicates that there were other reasons why these mailings were not sent out. And I'd like you to identify with that. You seem to assume that it was clear that the reason they didn't send them out was because they didn't want to have their donors disclosed. But the head of Rio Grande Foundation, for example, I think testified in his deposition that other things came up. How do you deal with that? So in the complaint, the plaintiffs both alleged that they did not want to disclose their donors. And if they would have to disclose their donors, they wouldn't send the mailers. And then after the fact... That's in the complaint. That's what the complaint says, correct. And then later, after the case had progressed and the presidents of the two plaintiffs are being deposed, it is true that Rio Grande's president said that there were a variety of factors that affected their decision to switch to mailers that were different, that did not trigger the statute because it did not require them to spend enough money. Does the record indicate at what point that decision was made by Rio Grande? Was it before or after the complaint was filed? I don't recall the testimony on that, but given that the complaint alleges their intention not to do it... At this point, you're not limited to the complaint. If there's a challenge, then you need to put on the type of evidence necessary at that stage of the proceedings. And here we're at kind of the summary judgment issue on standing. So is it clear when the decision was made not to send out the mailings? I don't know, Your Honor, exactly when that is, and I would have to review the testimony to see exactly when they made that decision. But in any event, the testimony from IOP's president doesn't suggest there was any other factor that made the difference in sending out their mailers, and the presidents of both organizations testified that they would like to engage in the same kind of advocacy in the future and that they will avoid reaching the thresholds of SB3 so that they don't have to disclose their donors in the future. I agree with you that RGF said that, but IOP didn't really give any indication that they had any plans to do any additional mailings at all in this state, that if they had done the mailing that they didn't do when they were going to spend $9,000, it would have been the first time they'd ever engaged in advocacy here. And they indicated they didn't know if they'd ever do it again in this state. So, you know, I see them as very different on this issue, and frankly, nobody argued it, but I think the biggest issue with IOP is mootness. Well, with IOP, their president testified that although they have operated primarily in Illinois, they have looked for issues on which to weigh in across the country. And, of course, one of those turned out to be the New Mexico ballot measure that they had planned to weigh in on. And IOP's president testified that they... And that would have been the 2020. That's correct. Right. And that's well over. That's correct, Your Honor. But he also testified that they would be looking for other issues to weigh in on across the country, including in New Mexico. But he did testify that he didn't know... Is that enough? I mean, you know, if you're looking at the exception to mootness for, you know, it's going to repeat and you don't have enough time to deal with it, I mean, is it enough that, you know, well, we've never done it in New Mexico before. We almost did it once, and we're going to look around the country, and there might be an issue that comes up, and we might want to do it in... I just don't think that's enough. Respectfully, I think it is, Your Honor. When you look at the Walker factors, they do satisfy... Well, Walker's not a mootness case. That's true, Your Honor. So it is true that this sort of act, that they satisfy the first Walker factor, excuse me, the first mootness criterion to overcome the mootness doctrine because it's capable of repetition, because it is too short to be fully litigated before an election. And there is a reasonable expectation that this plaintiff will be subject to the same government action because they've stated their intention to look for additional issues. They've stated their intention to look around the country and see if there might be some issues that are of enough interest to them that they might want to engage in maybe certain states, but maybe New Mexico, maybe not. I don't know if that's an... I think we have an Article III problem. Well, in the Walker case, you had plaintiffs who had never engaged in a ballot initiative campaign related to wildlife management in the state of Utah before. And nonetheless, the court said that they had standing because what they had done in other states was similar enough, or you had ones that were in Utah but had never engaged in such a thing but had taken only preliminary steps toward that. And so it seems to me that if those actions in other states or very preliminary preparatory actions were enough in Walker, then they should be enough for IOP that was ready to move forward in New Mexico that only didn't do so because of this... Is it possible for me to think that IOP had standing here but suffers from mootness now? They're different concepts, aren't they? Walker provides factors to help us assess whether someone has shown that they have standing. Right, that's right. The second mootness criterion and the third Walker factor are rather similar because they both pertain to what plaintiffs won't do in the future because of the statute. But in any event, I think the expectation this would come up for IOP again is reasonable. But of course, when it comes to standing, only one of the plaintiffs needs to show that it has standing. And Rio Grande certainly does satisfy this criterion because it is an organization that participates in New Mexico issue advocacy over and over on an ongoing basis. But isn't the test under Walker, whether the advocacy they're going to continue and have engaged in, is advocacy that is prohibited or is restricted by this statute? And doesn't that require, under our precedents, doesn't that require a showing that Rio Grande in the past has spent beyond the thresholds for the amount of expenditure or plans to extend more than the threshold amount? Don't you have to show that under – maybe we're wrong, but I think that's what our precedents require. No, Your Honor, because the first Walker factor looks at whether the plaintiff has engaged in the type of speech in question and before. And Walker, it wasn't a question of the amount spent? No, it was not, Your Honor. In fact, in Walker, Walker was about a Utah law that changed how ballot initiatives related to wildlife management could get on the ballot in that state. And one of the plaintiffs there had taken only very preliminary steps toward maybe putting a ballot initiative on the ballot in Utah in the past. I'm sorry, I got mixed up on names. I'm talking about the case involving Rio Grande Foundation against the city of Santa Fe. Well, in Rio, the reason – Didn't we say the expenditures have to exceed the threshold of the applicable law? As I recall, the key to that decision, which went against Rio Grande Foundation, was the third Walker factor, whether they had a plausible claim that they would avoid protected speech because of the government action they were challenging. And the court concluded that they didn't have that plausible claim because, in fact, in the record, they had stated that they intended to continue engaging in the same type of speech, notwithstanding the rule. And so they didn't fail there because of the – they hadn't engaged in the right amount of speech in the past. They failed there because they didn't say they were going to stop speaking in the future. They said they were going to keep speaking in the future. So there's no deterrence there. But as far as the amount of speech in the past, that's not relevant under Walker. The plaintiffs in Walker had done only minimal things. They haven't gone all the way to pursuing a ballot initiative campaign in Utah. But generally, they were involved in efforts to have new laws on wildlife management in some way. And that was enough. The type of speech requirement was read in a way that was broad to encompass a lot of things one might do. It didn't have to be precisely the same thing that the statute addressed. And here, the amount of – and certainly there's nothing in Walker that suggests the amount of money is relevant. It says what matters is the type of speech. And, of course, we're talking about the amounts of money they spent before SB 3 was even in effect. Your time has expired. Judge McHugh has a question, but make your answer brief. My question is the money – the amount of money becomes relevant if it's what triggers the statute, right? It's relevant to whether they'll be burdened by the statute. That's correct. Well, I did have a question. I wonder if your answer on the first Walker factor that we were discussing changes if you – if we consider the evidence that you seem to have cited that you didn't rely on – it's in the record, but you didn't rely on deposition testimony below to meet that factor, but you seem to be relying on this evidence now. Is that appropriate for us on de novo review to consider evidence the district court didn't consider when it decided that you hadn't met that first factor? I'm sorry. Which testimony are you referring to? Let me see. I've got a couple of things I wondered about. It seems like you relied entirely on the declarations on the first Walker factor, at least in your motion, in response to the motion. But it seemed to me that you were relying on some deposition testimony. Let me see. Guessing testified in 2017. RGF spent $1,976 on postcards. There was some testimony that RGF spent $20,000 for pledge mailings. That's also guessing's deposition testimony. You cite to that in your briefing, and I'm just a little confused about whether you think that we can consider that now. Do you see my question? I do see your question. That's not an issue we briefed, so frankly, I haven't – I don't know what the rule is on the propriety of that. But certainly, I believe we can draw from the same record that the district court could draw from. Even if he didn't make an argument about some of this evidence? I don't want to make statements about the law I'm not 100% confident with, but my – I think it would be pretty inappropriate for us to reverse a district court on summary judgment based on evidence that wasn't presented to the district court to consider the motion. No doubt about that part. It's in the record. No doubt if it wasn't before the district court. That's fine. Thank you. All right. Thank you. Good morning, Your Honors, and may it please the Court. My name is Nicholas Saito, and I'm here on behalf of New Mexico's Secretary of State, Maggie Louise Oliver. This case is a challenge to New Mexico's law requiring disclaimer and disclosure of major donors for election ads within – that spend more than $3,000 or $9,000, depending on whether it's statewide, in the 30 to 60 days before an election. There are two fundamental principles of judicial review here that warrant affirmance of the district court. The first is that to invoke the court's jurisdiction, a plaintiff must suffer an injury in fact that's traceable to the defendant's actions and remediable by an action of the court. The plaintiff cannot just act in a generally regulated area by the government and have that be enough to support standing. And the second issue is something that I think was highlighted by Judge Moritz's question at the end of Appellant's argument, that is the appellate court reviews the factual record that was developed below. Here that factual record consists of plaintiff's admission of New Mexico's facts concerning standing on summary judgment and plaintiff's lack of evidence presented to establish standing. The deposition testimony that plaintiffs – the appellate cite to, mostly in their reply brief, was not presented to the court on summary judgment, was not part of that summary judgment record, and is from unhighlighted parts of the evidence that the New Mexico Secretary of State presented to the court on summary judgment. So on the first issue of the actual injury requirement, as I argued this requires a concrete and particularized injury traceable to the defendant's actions and remediable by the court. In a chilled speech case, of course, the plaintiff does not need to wait until actually being injured by a prosecution, but the injury occurs from the chilled speech itself, and that is analyzed under the court's Walker test. RGF and IOP… Let me stop you for a minute on Walker. As I read Walker, we're not dealing with a three-part test that if you don't have one of these three elements, you fail the test. Walker sets out some factors to help with the analysis, and I feel like everyone is sort of arguing that it's this black and white test. Do you agree with me that Walker is different than a three-part required elements test? I had the same question this morning, and I was reading through that language in Walker, and it's conjunctive language. It says one, two, and three. But it says quite clearly that you don't have to have one. So this was the but part of my answer. So there is language in Walker that says, maybe if you have a new organization that you can establish the past actions that would have been regulated in a different way. And certainly you have cases like Walker itself, where the plaintiffs had acted in other states and had taken some concrete steps to present a ballot initiative. They announced the ballot initiative. They actually threatened some organizations with the ballot initiative. They had taken planning steps. And in response to that, the state of Utah passes a law changing the number of signatures you need for wildlife ballot initiatives to make it hard for this planned ballot initiative to go forward. And so when you have maybe a new organization or an organization that's taken a number of concrete steps in preparation, that can satisfy the first element of the Walker test. But that's not what you have here. Both organizations admit that their past actions would not have been regulated under SB 3. Let me ask you about that, because I'm not so sure about that. How do you measure the amount? How do you determine whether the threshold has been passed? What money do you look at? Well, it's... I'll be more concrete. Yes. The front page of today's Albuquerque Journal, which you may have seen, talked about a claim made by the Ethics Commission against a group that had sent out text messages. Sending out text messages is virtually cost free. I can't tell you everything about what the theory of the Ethics Commission was, but why is it just the cost of mailing? Why isn't the cost of... Why doesn't the cost include the work necessary to get the information and so on? So, New Mexico, and this was something that was explored at deposition and not presented by the plaintiffs on summary judgment in response to our cross-motion for summary judgment. But there are definitions in New Mexico statutes about what constitutes an expenditure of funds. Rio Grande Foundation testified about their ability to bring some work in-house, which made it less expensive. They talked about sending emails in the past, and those do not include any mailing costs. Has the Secretary of State indicated? Has any agency of the state government said, we don't include those costs? And we have...this is an electioneering, correct? This electioneering activity, not independent expenditures. Am I correct about how these are characterized under the statute? These are defined as independent expenditures. But this is a type that in federal law would be considered an electioneering expense. Is that correct? That's correct. Okay. Is the way you compute whether the threshold has been reached the same for both types? Yes. It is. So for independent expenditures, under federal law, the preparation costs are included. Is that not correct? My concern is... So we rule in your favor on this case, because they haven't shown... say our theory is they haven't shown they're going to spend more than the threshold amount. And then they're prosecuted for spending a lot less. But the theory of the prosecution, or whatever penalty is imposed on them, is that when you include the amount spent to produce the information that goes into the mailers, when you include that, they have exceeded the threshold. And that seems like something we should try to avoid. And that's why I'm asking whether there's something official from the New Mexico government about how these numbers, these thresholds are computed. So I'm not aware of any sort of official disclaimer from the New Mexico Secretary of State saying we will not prosecute you for these categories of expenditures. But there are regulations interpreting New Mexico's Campaign Reporting Act that define what expenditures are. Also, and this is why it's important... There are regulations. And what do they define as expenditures? And is it the same for all three categories in the independent expenditure? It is the same for all three categories. I don't have the expenditure language at issue, because it wasn't litigated below, and this wasn't part of the summary judgment record. We did introduce evidence on summary judgment that looked to the expenditure reports that Rio Grande Foundation had filed with the Secretary of State's office and showed... Honestly, I think that's what the Secretary of State would look to is those expenditure reports and said, you know, we spent $500 or $600 on these mailers, and they were well under any regulated amount. Well, let me...IPO testified that they were about to spend $9,000. That would have triggered the statute, wouldn't it? Well, IOP... I'm sorry, IOP. Yes, IOP, in their affidavit, testified that they wanted to spend more than $9,000 on mailers in the 2020 election. And they didn't do it because of the statute. That's their testimony. That was their testimony in the affidavit. They also...they made that statement... Well, answer my first question first. If, in fact, they would have spent $9,000, they would have been governed by the statute, correct? Yes. Okay. So why isn't that enough to say they were chilled? For a couple of reasons, Your Honor. First of all, when they made that statement on summary judgment, and they included that as one of their reported undisputed material facts, they didn't cite any record evidence for the fact that they didn't make this $9,000 mailer because of the threat of enforcement of the disclosure law. So you're saying it was a conclusory statement? It's not enough just to say it? Well, once we come forward with evidence that demonstrates that they actually had no concrete plans to make this expenditure, they had never made any similar expenditures outside of Illinois, that they had no idea how much money they actually would have spent. Well, they quantified it. $9,000. $9,000 was the affidavit. And they also provided testimony that they felt very strongly that they didn't want to disclose their donors because they had two concerns. One was that their donors would be harassed with people who disagreed with whatever their message was, and the second was their donors would stop donating if they had to be identified. Isn't it reasonable to infer that those reasons that they gave are the reasons why the statute chilled that they decided not to go forward with the mailing that would have triggered that requirement? So we do not, for the purposes of summary judgment, contest, and we think it's a contested material fact, whether this concern about donor disclosure motivates them generally. What we contest is whether there actually was any concrete plan to send these mailers in the first instance, or whether this was just a lawsuit filed to try to challenge this law, as IOP had done in other states, where they also had not made any independent expenditures that would be subject to the state's election laws. But they came forward with affidavit testimony saying we were ready to pull the trigger to send out this mailer that would have cost $9,000 or more, and we didn't do it because of the disclosure law. Isn't that enough to get them at least this far? I don't think so, Your Honor, because the district court found that that was enough to meet the second prong of the Walker test. It doesn't show past actions in New Mexico, and that's important. Walker makes it very clear. You don't have to show. You don't have to meet the first prong. You could be a first-time speaker, and you don't lose your rights just because it's your first time. We don't have a rule that says you can chill anybody that's speaking for the first time with impunity. But IOP is a well-established organization that has only acted in Illinois, has never acted outside of that state. The deposition testimony showed that they didn't have any details about how much they actually would have spent or any more details about the planned expenditure. And I think, as you noted, even if they could show that, their claim is moot. Their testimony that they planned... Well, mootness is an argument I raised. It's not one you raised. Shouldn't we remain as mootness? We shouldn't decide that on our own? I don't think so, Your Honor. We argued mootness. It's the second part of our response brief, argues mootness. And the district court even noted it in a footnote. You mean below? We argued mootness here. Section 2 of our brief page is 39 to 47. I wanted to touch upon a couple of things. The first is the importance of standing for these kinds of challenges. As this court recognized in Rio Grande Foundation v. Oliver, to conduct a merits analysis, you need to weigh the amount of money that's actually being spent by these organizations, these kind of concrete plans against the state's interest. The court can't conduct that merits analysis based on no past activity in the state that would have been regulated, a general intention, a plain affidavit, not supporting deposition testimony, saying you're going to violate the statute, and then uncertain future plans. So it really is important for the merits analysis. The second thing is that I really do think the appellants here have waived any reliance on deposition testimony that wasn't presented to the district court on summary judgment. Did you say it was presented by the state but not by them? They rely on unhighlighted portions of the depositions that we submitted as exhibits to our summary judgment brief. And they mostly do this in their reply brief that we didn't even have a chance. I need to understand what that means. You presented excerpts of depositions to the district court, and within those excerpts you highlighted certain portions? Is that what you're telling me? That's correct. Okay, I mean, certainly the district court is free to read anything you submitted, right? The district court is free to read those, but they weren't argued below. And I think an example is important here. So on pages 24 and 25 of their reply brief, appellants discuss RGF potentially sending these taxpayer pledge mailers to cost $10,000 to $15,000. It was never argued below on summary judgment. That evidence was not presented by the plaintiffs in the district court. Was that the pledge mailing? Yes. If they had presented it, we would have pointed out  because they weren't in the 30 to 60 days before an election, and there were $500 to $600 per mailer, which would have been below the thresholds for both the disclosure and disclaimer laws. So this was in the record below. They didn't argue it in the record below. They've argued in their reply brief here in support. But you're saying had you had the opportunity, you would have rebutted that this particular mailing was even subject to the disclosure requirements? That's correct, Your Honor. And that's just one example of many. I mean, there are probably dozens of citations, especially in the reply brief to deposition testimony that wasn't argued or presented for. Is that the same argument you'd make on the fact that Guessing testified in 2017 that they spent $1,976 on postcards related to a sick leave ballot measure? Yeah, so the sick leave ballot measure would also not have been. It was a city of Albuquerque measure, not subject to state law. But it also would have been below the disclosure law. I don't really think that they contested that. They have an intention to violate the disclaimer law when they put RGF on all their wars. Right, OK, thank you. There's one thing that it's not so much a legal matter as a pragmatic thing. Did you say that there are regulations interpreting what constitutes an expenditure? There are regulations to that effect. Yes, in the New Mexico. And are those in the record? They're not because, again, they're public record. The New Mexico Administrative Code interprets the election code. Could you provide those to the court? Yes, Your Honor. We'll provide that through a supplemental letter. My concern is having a decision that's based on a misconception of what an expenditure is. Maybe it won't turn out to be material to anything we decide. But I wouldn't want to decide this case on the ground that immediately a new case could be brought based on the state's interpretation of the statutory language, state's regulations, that weren't relied on by the plaintiff in this case. Understood, Your Honor. We'll see if we can do that. We'll submit those immediately. Thank you. Case is submitted.